DICKSON, Respondent, v. MARY S. EAMES, Executrix of CHARLES B. EAMES, Deceased, Appellant.

**St. Louis Court of Appeals, December 15, 1908.**

1. **TENDER: Option Contract: Waiver.** A purchaser of certain shares of stock in a corporation made a contract with the president of the corporation whereby the president gave the purchaser his notes payable one year after date and both parties agreed that the president had his option to pay the notes and take the stock within six months, and on failure to do so, the purchaser of the stock had his option on the maturity of the notes to return the stock and demand payment of the notes or retain the stock and cancel the notes. The president died before the maturity of the notes, with the stock in his possession. *Held*, in an action against his estate on the notes it was not necessary to tender the certificates of stock thus in· the possession of the defendant, executrix, in order that he might recover.

2. ———: ———: ———: **Unilateral Contract.** Such contract, having nothing to do with the purchase of the stock from the corporation, was a conditional sale of the stock by the plaintiff to the defendant's testator and was not a unilateral contract.

Appeal from St. Louis City Circuit Court.—*Hon. Robt. M. Foster,* Judge.

AFFIRMED.

*W. B. & Ford W. Thompson* for appellant.

*Benj. J. Klene* for respondent.

STATEMENT.—The action originated in the probate court of the city of St. Louis, and in due course was appealed to the circuit court of said city, where on a trial *de novo* to the court sitting as a jury, plaintiff recovered judgment. Defendant appealed to this court. Defendant, Mary S. Eames, is the executrix of the estate of her deceased husband, Charles B. Eames, who

died December 17, 1905. The facts shown by the evidence are these: On and prior to March 10, 1904, and until his death, Charles B. Eames was president of the Tuxpam Valley Railroad Company, a corporation. On March 11, 1904, Eames, as president of the company, sold plaintiff twenty shares of the capital stock of the corporation, of the par value of ten dollars, for two hundred dollars cash. Eames, as president, and Bartlett, as secretary, of the company, signed and delivered to plaintiff certificate No. 54, showing that plaintiff was the owner of twenty shares of paid up stock of the corporation. On May 3, 1904, plaintiff purchased ten other shares of the capital stock of the corporation for which he paid one hundred dollars cash and received certificate No. 56, showing that he owned ten shares of paid up stock of the corporation. On March 12, 1904, Eames made and delivered to plaintiff the following two promissory notes:

"$100.00.                St. Louis, Mo., Mar. 12, 1904.
   "One year after date I promise to pay to the order of W. A. Dickson one hundred dollars for value received, negotiable and payable at the Third National Bank of St. Louis, with interest after maturity at the rate of six per cent per annum until paid.
                                           "C. B. EAMES.
   "As per conditions attached.

"$100.00.            .    St. Louis, Mo., Mar. 12, 1904.
   "One year after date I promise to pay to the order of W. A. Dickson one hundred dollars for value received, negotiable and payable at the Third National Bank of St. Louis, with interest after maturity at the rate of six per cent per annum until paid.
                                           "C. B. EAMES.
   "As per conditions attached."

The following agreement was attached to each of the above notes:

"The conditions of payment of these notes are as follows: C. B. Eames, as president of the Tuxpam Valley Railroad Company, Ltd., has this day issued to W. A. Dickson 20 shares paid up stock of the said Company for $200, receipt of which is hereby acknowledged.

"If within six months from date hereof C. B. Eames tenders to W. A. Dickson the sum of $100 cash for 10 of the shares, or $200 cash for the 20 shares, W. A. Dickson agrees to either accept same and assign, by proper indorsements, said shares to C. B. Eames, or order; or else return, cancelled, to C. B. Eames, or his representative, the note or notes, which ever the cash payment may be, and W. A. Dickson to retain said shares as his property.

"But in any event, when the notes become due, W. A. Dickson shall not demand payment on them unless he first transfers to said C. B. Eames, or his representative, the shares of stock for which the notes were given, as security for the money invested in said shares by Dickson. And in case Dickson concludes to hold the shares of stock he must then return the notes, cancelled, and Eames shall owe Dickson nothing.

"W. A. DICKSON,
"C. B. EAMES.
"Witness: M. S. Stamps.
"St. Louis, March 11, 1904."

On May 3, 1904, Eames made and delivered to plaintiff the following other promissory note:

"$100.00.          St. Louis, Mo., May 3, 1904.

"One year after date I promise to pay to the order of W. A. Dickson, one hundred dollars for value received, negotiable and payable at the Third National Bank of St. Louis, with interest after maturity at the rate of six per cent per annum until paid.

"C. B. EAMES."

A duplicate of the agreement of March 11th, except as to dates and amount, was attached to the above note. These three notes are the basis of plaintiff's claim for allowance against the Eames estate. The claim was filed in the probate court October 30, 1907. In the petition for the allowance it is alleged that said Charles B. Eames had had possession of the certificates representing the shares of stock mentioned in said claim since about the eighth day of November, 1904, "and that the same have been inventoried as part of the assets of his estate, by reason whereof claimant is unable to tender said certificates herewith, but now tenders them without their production."

On November 11, 1904, Eames wrote plaintiff the following letter:

"Mr. W. A. Dickson,
    "St. Louis.

"Dear Sir: I think I have an opportunity to make a deal by which I can dispose of all the effects of the defunct Tuxpam Valley Railroad Company, Ltd., so that possibly I can recover for all the stockholders the amount of their original investment. But in order to do this, I will have to have control of all the stock. This is being assigned to me as fast as possible by the different stockholders, and if you will leave this in my hands and sign the inclosed receipt in duplicate, retaining one for yourself and returning the other to me, together with your certificates of stock signed on the back in blank, I will do everything in my power to get your original investment back, but, of course, I cannot guarantee anything.

"I would be glad to hear from you as soon as possible, and if agreeable, to receive the stock and one of the duplicate receipts.

"Yours very truly,
                    "C. B. EAMES.

"P. S.—This is the letter I have written to all of the stockholders, but in your case want to suggest that you retain, on each certificate that I have given you my note for, the said guarantee given by me, sending me the stock. I will have to have this in order to place all the stock and charter in escrow pending the fulfillment of the agreement that I expect to make with a man of means in this city and get us out of the hole and give up all our interests in the old company, which, between you and me, is not of any tangible value. You may rest assured that I will do the square thing with every one of our stockholders. C. B. EAMES."

Following the letter a receipt was given which is as follows:

"St. Louis, Nov. 8, 1904.

"Received of W. A. Dickson 65 shares of the capital stock of the Tuxpam Valley Railroad Company, Ltd., which is signed in blank. C. B. EAMES.

"I hereby authorize C. B. Eames as my agent to dispose of same to my best interests. If I can realize the purchase price of same, seven hundred dollars, I will be satisfied, and hereby authorize him to dispose of it at this price."

The inventory of the Eames estate shows that he held 2,875 shares of the capital stock of the Tuxpam Valley Railroad Company at the date of his death, but the serial numbers of the certificates were not shown on the inventory.

BLAND, P. J. (after stating the facts).—1. Defendant contends that the terms of the optional agreement between plaintiff and Eames were never complied with, and for this reason plaintiff cannot recover. There is no pretense that Eames at any time exercised, or attempted to exercise, his option to pay the notes in six months and demand a transfer of plaintiff's stock to himself; on the contrary the evi-

dence shows he did not offer to exercise his option to pay the notes in six months. The option given plaintiff was that at the maturity of the notes he might keep the stock by surrendering the notes, or transfer the stock to Eames and demand payment of the notes. The question is, whether or not the evidence tends to show plaintiff exercised his option by electing to transfer the stock and by demanding payment of the notes. Eames died before the maturity of either of the notes, hence plaintiff could not exercise his option until the executrix of Eames' estate qualified, and then only by presenting his claim to the probate court for the amounts and giving notice thereof to the executrix. There is no evidence showing at what time defendant qualified as executrix and no point is made that plaintiff did not present his claim in the probate court as early as he might have done. The contention is that as plaintiff did not present his claim, produce the certificates of stock and offer to transfer them to the Eames estate, he failed to comply with the terms of his option. Eames' letter of November eleventh and his receipt to plaintiff for sixty-five or seventy-five shares of stock in the corporation satisfactorily shows that certificates Nos. 54 and 56 issued to plaintiff and indorsed in blank by him were delivered to Eames. Presumably, these certificates were in Eames' possession at the time of his death and hence were in the hands of his executrix at the date of the trial. Defendant was therefore in no position to ask plaintiff to do that which she prevented him from doing, by retaining possession of the certificates of stock and refusing to produce them at the trial for formal transfer to herself, as executrix. We think the evidence clearly shows plaintiff did all he could in the circumstances shown, to exercise his option within the terms of the contract and that his failure to comply with the strict letter of the contract was due to defendant's action.

2. Defendant's learned counsel insists that the contract is unilateral and without consideration, and is unenforceable. This idea seems to have originated by confusing the sale of stock by the corporation to plaintiff with the individual transaction between plaintiff and Eames. Plaintiff had purchased and paid for the stock and had received the certificates when he and Eames entered into their agreement. The purchase of the stock from the corporation, so far as the evidence discloses, had nothing whatever to do with the conditional or optional sale of the stock by plaintiff to Eames. Eames took an option to pay the notes before maturity and demand a transfer of the stock to himself and, on tender of payment, plaintiff was bound to transfer the stock to Eames or surrender the three interest bearing notes six months before they were due; on the maturity of the notes, plaintiff had the option to surrender the stock and demand payment of the notes, or retain the stock and surrender the notes; such a contract is not unilateral. Both parties were bound by its terms, and that the contract is supported by a valid consideration, we think, admits of no doubt.

The judgment is for the right party and is affirmed. All concur.